Statement of the Case.
NICHOLLS, J.
On the 3d of January, 1908, at Opelousas, in the parish of St. Landry, Dr. Gregory W. Martin sold to Bernard Bennett, with full warranty and subrogation by notarial act before George T. Edwards, notary public, 20 arpents of land in the parish of St. Martin, with the buildings and improvements thereon described in the said act of sale; it being declared that it was a part of same land acquired hy the vendor from Arthur Patin. The purchaser acknowledged delivery and possession thereof.
The act was recorded on January 7, 1908, in the Book of Conveyances and Book of Mortgages of the Parish of St. Martin. The act contained the following recitals:
“It is well understood that the vendor reserved the right to perpetually cultivate any ortion of the land not used by the vendee, his eirs or assigns, or such persons as may use and occupy same under contract with the latter. This sale is made and accepted for and in consideration of the price and sum of three thousand dollars, in part payment and deduction thereof, the said purchaser has paid the vendor in cash current money, at the execution hereon, the sum of two hundred dollars, the receipt whereof is hereby acknowledged and full acquittance and discharge granted and for the balance of said purchase price purchaser has executed one certain promissory note for the sum' of two thousand eight hundred dollars drawn to the order of G. W. Martin, dated this day and made payable sixty days after date, with eight per cent, per annum interest from maturity until paid which said note after being paraphed ‘Ne Varietur’ for identity with this act, was delivered to vendor who acknowledged receipt of same.
“Now, in order to guarantee the full and final payment of said note and mortgage and attorney’s fees hereinafter mentioned, special mortgage and vendor’s lien and privilege are hereby retained on said property in favor of vendor and that of all future holder or holders of said note. The said purchaser hereby obligates himself not to incumber or alienate said property to the prejudice of this act. In the event of suit to recover payment of said note, or any part thereof, the said purchaser obligates himself to pay to the holder or holders of said note attorney’s fees fixed at ten per cent, on the amount sued for. .
*168 “The property herein sold being incumbered with a mortgage, it is herein agreed that the purchaser is hereby given the right to withhold payment of the above-mentioned note until said mortgag-e is satisfied and canceled from the mortgage records of St. Martin parish. Contracting parties dispense me, notary, from production of certificate of mortgage required by law. The vendor having declared that all taxes due and exigible on said property are paid, the parties hereby free me, notary, from all responsibility for nonproduction of tax receipts. And in further consideration of the above transfer the purchaser hereby obligates himself to give the vendor ten per cent, of the net proceeds of all minerals or oils that may be taken from said land.
“Done and passed at my office at Opelousas, La., on the day, month, and year above written, in the presence of A. D. Stewart and L. M. Meyer, competent witnesses, who have signed with appearers and me, notary, after reading the whole.
“[Signed] Dr. G. W. Martin.
“B. Bennett.
“Geo, T. Edwards, Notary Public.
“■Witnesses:
“[Signed] A. D. Stewart.
“L. M. Meyer.
“State of La. Parish of St. Martin.
“I do hereby certify that the above is a true and correct copy of the original on file and of record in my office recorded January 7th, 1908, in Conveyance Book No. G8, folio 421, under No. 38279, and in Mortgage Book No. 17, folio G95, under No. 22G32.
“In evidence whereof witness my hand and seal of office at St. Martinville, La., this 18th day of September, A. D. 1908.
“[Signed] Geo. S. Eastin,
“Dy. Clerk & Ex Officio Dy. Recorder,
“St. Martin Parish, La.”
On September 24, 1908, Dr. G. W. Martin, as holder and owner of the promissory note of $3,000 made and subscribed by Bernard Bennett, and identified with the said act of sale before Edwards, notary, and secured by special mortgage and vendor’s privilege, obtained an order for executory process directing the seizure and sale of the said property. On the’ 18th of October, 1908, Bernard Bennett obtained an injunction enjoining the sheriff and the plaintiff in executory proceedings staying and prohibiting the execution of said sale. In his petition for the injunction, Bennett prayed that, upon trial of the issues raised thereby, the writ of injunction be maintained and perpetuated. In his pefitfcai for injunction, plaintiff in injunction alleged that the sale declared on by the plaintiff and the note executed for the credit payment of the purchase price of the sale are null and void for the following reasons, to wit:
That Dr. G. W. Martin, plaintiff in this suit, was not the owner of the land described in the act of sale of date January 3, 1908, as he represented himself to be to petitioner, the title to the same being of record in the parish of St. Martin, in the name of Francis R. Martin, at the date of the sale, and that respondent believing at the time that the vendor, the said Dr. G. W. Martin, was the owner of the property, took a purported deed of sale from him in that belief, and in so doing there was error upon his part, and upon the principal motive of the contract.
Secondly. As petitioner discovered subsequent to the sale the title to the property is materially defensive in other respects, namely, “that there was at the time of the sale, and is now, pending in your honorable court the suit of Emma Constantin, Wife, et al. v. Arthur Patin, wherein the plaintiffs claim the title and ownership to the tract of land described in plaintiff’s petition.”
Thirdly. The act of sale, while purporting to transfer to respondent the title to the land, does not do so, inasmuch as vendor in the act of sale retains perpetual possession and use for cultivation and the act was intended simply to transfer to respondent the mineral rights of the land, Subject to the condition of the cash and credit payment stated therein, and to the additional payment of one-tenth of the oil or minerals that should be developed on the tract, and plaintiff was well aware that the act was simply intended to transfer to respondent the mineral rights, and that it was respondent’s purpose and the principal motive of the contract upon his •part to get possession of the land without delay after the sale in order to develop there *170 from oil or mineral products, and to that end to organize a stock company and exploit 'the tract 'by the issue and sale of stock — all of which respondent was prevented from doing, by his inability to get possession of the land. That at said date there was a boom in oil lands at that point, and of which petitioner could have availed himself to carry out his purpose in making the deal. That plaintiff was not in position to place respondent in possession of the tract of land until five months after the sale to him. That in the meantime he made demands for possession of the property upon plaintiff, and had contracted with divers persons to- take stock in the company which he had intended to organize, all of whom canceled their proposition to that effect; developments in the oil field of Anse La Butte between the date of the purchase and the date at which plaintiff nominally acquired the title to the land having materially changed, the output of oil greatly lessened, and respondent in consequence was unable to successfully organize and exploit his proposed oil company.
He further shows: That, had he been able to obtain possession of the land at or within a reasonable time after the sale, he could have turned the purchase to great profit.
That the statement in the notarial act to the effect that the tract was delivered to petitioner and that he accepted delivery was not the fact, and was made in error into which the petitioner was led by the representations of the said Martin that his title was good and valid, the delivery under the circumstances being impossible as was known to said Martin, the sale having been passed in the city of Opelousas, and the property being situated in the parish of St. Martin.
Finally respondent avers that the clause in which the plaintiff in the act of sale stipulates for the retention of a special mortgage with vendor’s lien is void, because the act in truth and in fact did not transfer to respondent the ownership of the land, but merely the oil and mineral rights thereon as stated above. Respondent now further shows that, considering the premises, the plaintiff has no legal right to proceed to the sale of the property under executory process or otherwise, and that ihe is entitled to a -writ of injunction staying the sale and without -bond and also to a judgment annulling entirely the sale and awarding. to respondent judgment for the return of $200, the amount of cash paid to plaintiff by respondent.
In view of the premises, he prayed that the authentic act purporting to be a sale by plaintiff to him passed before George T. Edwards, notary public, of date January 3, 1908, be annulled and avoided, as also the promissory note executed by respondent as part of the consideration of said sale, and that he have judgment against the plaintiff in the said sum of $200, with 5 per Cent, per annum interest from the said date of sale, being the amount paid in cash as aforesaid on the date of the execution thereof; that writs of injunction issue against the sheriff of this parish and the plaintiff herein staying and prohibiting the execution of the said order of seizure and sale without bond, and that, upon trial hereof, said writs of injunction be maintained and perpetuated.
The district court rendered judgment setting aside and dissolving the writ of injunction which had issued, and decreeing that the plaintiff in injunction pay the costs of the proceedings. The judgment further adjudged and decreed that the defendant, Dr. G. W. Martin, recover from the plaintiff in injunction the sum of $25 as damages for attorney’s fees. Plaintiff in injunction has appealed.
The injunction which issued in this case against the execution of thé order of seizure and sale granted by the district court for the parish of St. Martin on the 14th of *172 October, 1908, on thé petition of Dr.' G. W. Martin, was based on tbe ground: That G. W. 'Martin was not the owner of tbe land described in tbe act of sale of- January, 1908, as tbe vendor represented himself to be, tbe title to that property standing at that time in tbe conveyance records in tbe name of Francis R. Martin, that plaintiff in injunction believed tbe representations of G. W. Martin to be true, and there was error on bis part in taking tbe deed and in tbe principal motive for making tbe contract.
That be subsequently discovered tbe title to be materially defective in other respects. That at the time of the sale there was, and continued still to be, a petitory action for tbe recovery of the land pending in tbe district court for tbe parish of St. Martin in tbe suit of Emma Constantin, Wife, et al. v. Arthur Patin. That the act of sale purporting to transfer tbe title of said property to him did not do so, inasmuch as tbe vendor in the act retained in the act perpetual possession and use for cultivation. That tbe act was intended simply to transfer to him the mineral rights to tbe land subject to tbe condition of tbe cash and credit payment stated therein and to tbe additional payment of one-tenth of tbe oil or minerals that would be developed on the tract. That it was bis purpose and tbe principal motive of bis making tbe contract to get possession of tbe land in order to organize a stock company and exploit tbe tract by tbe issue and sale of stock, of which tbe vendor was well aware.
That the statement in tbe act of sale that tbe land was delivered to him and he bad accepted tbe same was not true, and was made in error under tbe misrepresentation of tbe vendor that his title was good and valid. That delivery could not have been made, inasmuch as tbe land was in the parish'of St. Martin, and tbe act of sale was passed at Opelousas, in tbe parish of St Landry.
That the clause in tbe act which stipulated for tbe granting of a special mortgage and retention of vendor’s privilege was void because tbe act did not transfer to him the ownership of tbe land, but merely tbe oil and mineral rights as stated. That, considering the premises, tbe vendor bad no legal right to proceed to tbe sale of the property under executory process or otherwise. Tbe complaint against tbe form of proceeding was leveled, not at tbe evidence upon tbe order of seizure and sale was granted, but upon the fact that that payment of tbe note declared on was secured by neither special mortgage nor vendor’s privilege.
Opinion.
Tbe testimony in tbe case discloses that in point of fact G. W. Martin was owner of tbe property which in tbe act of January 3, 1908, was declared by him to be sold to tbe plaintiff, Bennett. On that day tbe title to that property stood on the conveyance record in tbe name of bis brother, F. R. Martin, as having been conveyed to him, but F. R. Maitin only held in reality tbe legal title, and not the actual ownership, of tbe property, and at tbe date of the taking out of executory process tbe. legal title had been replaced in G. W. Martin, and evidence of that fact bad been duly placed of record January 12, 1908, in tbe conveyance books of the parish of St. Martin.
Tbe object of G. W. Martin placing the title of tbe property in tbe name of F. R. Martin wras simply to obtain from tbe latter a note for tbe recited price secured by special mortgage and vendor’s privilege and to dispose of the note. It was tbe mortgage securing that note which was referred to in tbe act of 3d of January. That mortgage was canceled in tbe mortgage records before tbe executory proceeding was resorted to, and, *174 the property itself having been retroceded, by F. R. Martin as just stated, the situation stood at that date as if the act to F. R. Martin had not been passed.
This being the case, we have to examine what the rights of G. W. Martin were at that time to the property. Appellant urges that there was at that time, and there was still, pending a petitory action for that property brought by Emma Constantin et al. against Arthur Patin, to whom he had sold it. Such a suit had been brought against Arthur Pat-in, to whom, in fact, G. W. Martin had sold the property. On July 27, 1908, on learning of the institution of that suit, the property was retransferred to G. W. Martin by Patin, and the act of sale was placed of record August 1, 1908, in the conveyance books of St. Martin parish. The suit of Constantin et al. against Patin was based upon allegations that the property belonged to them, though their title was illegally asserted to have been divested by a certain tax adjudication to the state at a tax sale under which Patin (by purchase from G. W. Martin) claimed title in himself. Martin, it appears, had believed himself to have been the adjudicatee at the tax sale, and to have acted under that belief in selling to Patin, but through some cause not explained the state itself appeared as the adjudicatee, and its title was recorded. The state, however, having become the adjudicatee, the property was offered a second time for sale at public sale under section 3, Act No. 80 of 1888, and it again became the adjudicatee. The title being in that condition, G. W. Martin purchased the state’s title by deed from the State Auditor, which deed was duly recorded (September 14, 1903) in the conveyance books of the parish of St. Martin. This purchase by Martin seems to have satisfied the attorneys of the Constantins of the futility of further prosecuting their action against Patin, for no further action was taken in it, and all parties considered it at an end. The papers in the case bear, upon the envelope thereof the words “Discontinued,” placed there by the district clerk on the declaration (as he testified) made to him by plaintiff’s attorney of record that the case was ended. No formal entry of discontinuance was made in court, but the case, by the effect of the act of-, can be considered as abandoned.
We find, therefore, no good reason for the plaintiff, Bennett, succeeding in this suit on account of defects in the title of G. W. Martin, and no good ground of complaint that there are mortgages upon the property. The certificate of the recorder of the parish of St. Martin shows that the only mortgage existing upon it at the date of this suit is that granted by the plaintiff in injunction in the act of January 3, 1908.
We see no force in the contention of plaintiffs in injunction that the act of January 3, 1908, was not an act of sale; there was no price fixed therein; that it did not transfer the ownership of the property described therein to him.
The act recites the appearance of Gregory W. Martin and Bernard Bennett before the notary; that the former declared that for and in consideration of the price and sum thereinafter set forth he thereby granted, bargained, sold, transferred; conveyed, assigned, and set over, with fpll guaranty against all troubles, debts, mortgage, claims, evictions, donations, alienations, or other incumbrances whatsoever, and with subrogation to all of his rights and actions of warranty against all previous owners, and with full guaranty of title, unto Bernard Bennett here present purchasing and accepting for himself, his heirs and assigns, and acknowledging delivery and possession thereof, the following described property in the parish of St. Martin:
“Twenty arpents of land with buildings and improvements thereon measuring one arpent front by twenty and bounded as follows [giv *176 ing boundaries] being a -part of same land delivered by vendor from Arthur Patin. It is well understood that the vendor reserves the right to perpetually cultivate any portion of the land not used by the vendee, his heirs or assigns, or such persons as may use and occupy same under contract with the latter. This sale is made and accepted for and in consideration of the price and sum of three thousand dollars in part payment, and deduction whereof the said purchaser has paid the vendor in cash current money at the execution thereof the sum of two hundred dollars, the receipt whereof is hereby acknowledged, and full acquittance and discharge granted, and for the balance of said purchase price purchaser has executed his certain promissory note for the sum of two thousand eight hundred dollars drawn to the order of G. W. Martin dated [giving full description of note].
“Now, in order to guarantee the full and final payment of said note and interest and attorney’s fees hereinafter mentioned, a special mortgage and vendor’s lien and privilege are hereby retained on said property m favor of vendor and of all future holders of said note. The said purchaser obligates himself not to alienate or incumber said property to the prejudice of this qct. * * * The property herein sold being incumbered with a mortgage, it is hereby agreed that the purchaser is hereby given the right to withhold payment of the above-mentioned note until said mortgage is satisfied and canceled from the mortgage records of St. Martin parish. * * *
“And in further consideration of the above transfer the purchaser hereby obligates himself to give the vendor ten per cent, of the net proceeds 'of all minerals or oils that may be taken from said land.”
We do not appreciate the force of the contention that the act in question does not evidence a sale supported by a special mortgage in view of its recitals. There is beyond doubt a fixed price ($3,000), a thing sold (the property described), and the consent of two parties (a vendor and a vendee) to the contract. Plaintiff recognizes himself that there was a contract of sale, but he insists that it was a sale of mineral rights not a sale of land. There was not a word in the act purporting to sell or convey minerals or oil as something existing under and separate and distinct from the land described in the act or as something which it was hoped might exist under and separate and distinct from that land. McManus v. Jewett, 6 La. 536; Fortier v. Zimpel, 6 La. Ann. 55.
There was no obligation imposed upon nor consent given by Bennett to take minerals or oil at any time under any circumstances from beneath that land. Should he in fact make an attempt to do so, it would be prarely voluntary act on his part. There can be no dispute as to the fact that under the act as written all minerals or oils which might exist under the land were conveyed to Bennett by the act modified possibly by the clause inserted at the close of the act with reference to the obligation consented to by Bennett to give the vendor G. W. Martin 10 per cent, of the net proceeds of all minerals or oils which might (may) be taken from said land. It is not necessary for us to express an opinion presently as to what effect that clause would have in the possible contingency of Bennett’s finding and taking minerals and oils under the land. It will be time enough to consider that question when, and if, that contingency should ever arise.
If Bennett acquired nothing but mineral rights which he now claims was the object and purpose of the act, what meaning can be given to the clause in the act that the vendor reserved the right (subordinately to that of Bennett or any one holding contract rights under him) to cultivate any portion of the land not used by such persons? We do not under the evidence adduced find that G. W. Martin made any misinterpretations to the plaintiff in injunction, or that he was led in to error in respect to the status of the property.
He alleges that the statement made in the act of sale that the property was delivered to him, and that he acknowledged such fact, is untrue, as the act was passed in the parish of St. Martin. That allegation is correct so far as actual delivery of possession is concerned, but that delivery of possession of the property was acknowledged by Bennett to have been made to him cannot be denied. Actual delivery of possession of property sold *178 to the purchaser thereof is not essential to the foundation of a completed contract of sale between the parties. The record does not disclose any obstacles to Bennett taking physical possession of the property, nor that he has ever made an attempt to do so. This case is before us not on an appeal from the order granting executory process, but on appeal from a judgment setting aside such a process. We find no legal ground for reversing the judgment appealed from and for enjoining the present proceedings in rem.
Article 732, subd. 1, Code Prac., authorizes the executory process “when the creditor’s rights arise from an act importing a confession of judgment” (French text “agit en vertu d’um acte emportant exécution parée” and which contains a privilege or a mortgage). The creditor’s action in the present proceeding is authorized by the article cited.
The judgment appealed from is hereby affirmed.
See dissenting opinion of PROVOSTY, J., 53 South. 484.